IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CABONGO MBIA DISH, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | No. 26-03127-CV-S-BP |
| ) | |
| KRISTI NOEM, Secretary, U.S. Department of ) | |
| Homeland Security, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and wishes to seek a bond hearing, but DHS has made clear that he will not be granted one. Pending is his Petition for Writ of Habeas Corpus in which he argues federal statutes and the Due Process Clause require that he be granted a bond hearing. The Court agrees with Petitioner's statutory arguments, and on that basis it concludes his request for a Writ of Habeas Corpus should be **GRANTED**.

## I. BACKGROUND

Petitioner is a citizen of Angola who has lived in the United States since May 2024. (Doc. 1, ¶¶ 2, 18.) He has applied for asylum, (Doc. 1, ¶ 18), and in January 2026 he was detained during a check-in with Immigration and Custom Enforcement. (Doc. 1, ¶¶ 5, 19.) He has been detained ever since and is currently being held in the Greene County Jail. (Doc. 1, ¶¶ 13.)

Petitioner would like to be considered for release on bond. However, any request for such consideration is futile because DHS and the Executive Office for Immigration Review ("EOIR") take the position that Petitioner's detention is mandatory and bond is categorically not permitted. Moreover, in September 2025, the Board of Immigration Appeals (the "BIA") changed its long-standing prior position on the matter and held that a person in Petitioner's circumstances is not

entitled to consideration for release on bond. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

Petitioner brought this proceeding, which seeks, *inter alia*, a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) the Green County Sheriff, (2) the Secretary of DHS, and (3) the Acting Assistant Field Office Director for the Kansas City Field Office for Immigration and Custom Enforcement, all in their official capacities. He asserts the Immigration and Nationality Act (the "INA") and the Due Process Clause both entitle him to the opportunity to seek release on bond. Respondents argue that Petitioner is not entitled to be considered for release and, in the interest of expediency, incorporate arguments they have made in other similar cases in this Court, including in cases before the undersigned and in particular the case of *Francisco v. Arnott*, Case No. 25-03377-CV-S-BP. The Court will address the arguments Respondents have presented in *Francisco* as if they were presented here and resolve the issues below.

## II. DISCUSSION

### A. Jurisdiction

Respondents argue that three statutory provisions—8 U.S.C. §§ 1252(e)(3), (g), and (b)(9)—deprive this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

Section 1252(e)(3)(A) specifies that "[j]udicial review of determinations under section 1225(b) . . . and its implementation is available in an action instituted in the United States District Court for the District of Columbia." However, because of § 1252(e)(3)'s title—"Challenges on Validity of the System"—it has been construed as relating to challenges to statutes and regulations, not individualized decisions. *E.g.*, *Mairena-Munguia v. Arnott*, 2025 WL 3229132, at *2 (W.D. Mo. Nov. 19, 2025) (citing *Munoz Materano v. Arteta*, 2025 WL 2630826, at *10 (S.D.N.Y. Sept. 12, 2025); *see also Garland v. Aleman Gonzalez*, 596 U.S. 543, 559 (2022) (Describing §

2

Case 6:26-cv-03127-BP    Document 7    Filed 03/11/26    Page 2 of 10

1252(e)(3) as "channeling review of the 'implementation' of specified provisions into the U. S. District Court for the District of Columbia."); *Grace v. Barr*, 965 F.3d 883, 893 (D.C. Cir. 2020) (Discussing the difference between the review provisions in § 1252(a)(2) and § 1252(e)(3)). This understanding is also consistent with the deadline for bringing such claims, which must be filed "no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is first implemented." 8 U.S.C. § 1252(e)(3)(B). "Further, this statute only [applies to] those held under 8 U.S.C. § 1225. However, the Court finds that Petitioner is being held under 8 U.S.C. § 1226. Therefore, 8 U.S.C. § 1252(e)(3) does not deprive the Court of [j]urisdiction." *Mairena-Munguia*, 2025 WL 3229132, at *2.

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." Such judicial review is to commence in the Court of Appeals. 8 U.S.C. § 1252(b)(2). However, § 1252(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Department of Homeland Sec. v. Regents of the Univ. of CA*, 591 U.S. 1, 19 (2020) (cleaned up; quotations omitted); *see also Jennings v. Rodriguez*, 583 U.S. 281, 293-94 (2018). Petitioner is not bringing one of these challenges, so § 1252(b)(9) does not deprive the Court of jurisdiction.[1]

---

[1] Numerous suits like this one have been brought around the country; in virtually all of them the district court has found jurisdiction exists, and there are no appellate decisions addressing this issue to consider. In the interest of brevity, the Court cites, as representative examples of cases supporting this analysis, a few of those decisions from District Courts in this Circuit: *Sales Abrocio v. Noem*, 2025 WL 3295530, at *2-3 (D. Neb. Nov. 25, 2025); *Eshdavlatov v. Arnott*, 2025 WL 3217838, at *2 (W.D. Mo. Nov. 18, 2025); *Barrajas v. Noem*, 2025 WL 2717650, at *3 (S.D. Iowa Sep. 23, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, at *4 (N.D. Iowa Sep. 23, 2025); *Jose J.O.E. v. Bondi*, 2025 WL 2466670, at *6-7 (D. Minn. Aug. 27, 2025).

Lastly, § 1252(g) provides that no court has jurisdiction under any statutory provision (including 28 U.S.C. § 2241) "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . ." Like § 1252(b)(9), this provision is "narrow," as the review preclusion is specifically limited to review of decisions to commence or adjudicate cases or execute removal orders. *Department of Homeland Sec. v. Regents of the Univ. of CA*, 591 U.S. 1, 19 (2020). Petitioner is not challenging any of these decisions or actions, so § 1252(g) does not deprive the Court of jurisdiction.[2]

### B. Exhaustion

Respondents next argue Petitioner's request for relief should be denied because he has not exhausted his administrative remedies. 8 U.S.C. § 1252(d)(1) provides that exhaustion is required before a final order of removal can be challenged in court. But (1) Petitioner is not challenging a final order of removal and (2) he seeks relief under 28 U.S.C. § 2241, which does not have an exhaustion requirement. These observations have caused courts to conclude § 1252(d)(1) does not require exhaustion when the issue is whether an alien is entitled to a bond hearing. *E.g.*, *Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022); *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004); *see also Eliseo A.A. v. Olson*, 2025 WL 2886729, at *6 (D. Minn. Oct. 8, 2025). Moreover, virtually every District Court to consider the issue in the context at issue here has concluded the BIA's recent decision in *Matter of Yajure Hurtado* renders any attempt to exhaust futile and, hence, excuses it.[3]

---

[2] The cases cited in footnote 1 also serve as representative examples of cases from within this Circuit reaching the same conclusion.

[3] Representative cases from courts in this Circuit include: *Gonzalez Ochoa v. McCleary*, 2026 WL 235589, at *4 (S.D. Iowa Jan. 2, 2026); *Mairena-Munguia v. Arnott*, 2025 WL 3229132, at *2 (W.D. Mo. Nov. 19, 2025); *E.M. v. Noem*, 2025 WL 3157839, at *2 n.1 (D. Minn. Nov. 12, 2025) (citing *Alvarez Ortiz v. Freden*, 2025 WL 3085032, at *5 (W.D.N.Y. Nov. 4, 2025)); *Eliseo A.A. v. Olson*, 2025 WL 2886729, at *6 (D. Minn. Oct. 8, 2025).

### C. The INA

With respect to the merits, Petitioner's statutory argument involves the interplay of two statutes: 8 U.S.C. § 1225 and § 1226. The question is: which one applies to Petitioner? In answering this question, the Court must begin with the statutes' plain language. *E.g.*, *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalue, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011). "[T]he title of a statute and the heading of a section are [also] tools available for the resolution of a doubt about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) (cleaned up). Finally, "when deciding whether the language is plain, [the Court] must read the words in their context and with a view to their place in the overall statutory scheme" because the objective is "to construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015) (cleaned up).

Petitioner argues that his situation is governed by § 1226, which is entitled "Apprehension and detention of aliens" and provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Except for aliens described in § 1226(c) (which consists of those who committed various crimes and does not apply to Petitioner's circumstances), the Attorney General may detain the alien or release him or her on bond. *Id*. § 1226(a)(1), (2). And significantly for present purposes, there can be little doubt that Petitioner is an alien who has been arrested pending a decision regarding whether he is to be removed, as described in § 1226(a).

But Respondents argue that § 1225(b)(2) applies to Petitioner. Respondents' reasoning starts with § 1225(a)(1), which provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission." Thus, according to Respondents, by operation of law Petitioner was deemed an

"applicant for admission." And "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to . . . the United States" are to be "inspected by immigration officers." *Id*. § 1225(a)(3).

The inspection called for by § 1225(a) is discussed further in § 1225(b). Section 1225(b)(1) applies to aliens who are inadmissible for specific reasons, such as "fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1225(b)(1)(A)(i)). Section 1225(b)(2) is, in one sense, broader in that it applies to aliens who are not addressed in § 1225(b)(1). It is also narrower, in that it directs that "if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted" he or she shall be detained. 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

As explained above, Respondents argue that Plaintiff is deemed an "applicant for admission" pursuant to § 1225(a)(1); they then contend he must therefore also be deemed to have been "seeking admission" within the meaning of § 1225(b)(2)(A). However, this is not what the statute's text provides. Congress specified that the mandatory detention provision of § 1225(b)(2)(A) applies to those "seeking admission" and did not use the phrase "applicant for admission" that it defined previously in § 1225(a)(1). In other words, Congress could have drafted § 1225(b)(2)(A) to provide that "if the examining immigration officer determines that an *applicant for admission* is not clearly and beyond a doubt entitled to be admitted he or she shall be detained"—but it did not. And here, while Petitioner may be an applicant for admission, he was never *seeking admission*, so § 1225(b)(2)(A) and its provision for mandatory detention do not apply.

> Had Congress intended for [§ 1225(b)(2)(A)] to apply to all applicants for admission, it could have said so by simply replacing the phrase "an alien seeking admission" with the term "an applicant for admission;" or to be even more succinct, it could have replaced the phrase "an alien seeking admission" with the word

6

"alien." Under either of these constructions, it would be clear that "applicant for admission" means the same thing as "alien seeking admission," which is Respondents' interpretation of the statute. But this is not the language that Congress chose.

*J.A.M. v. Streeval*, 2025 WL 3050094, at *2 (M.D. Ga. Nov. 1, 2025). Respondent's interpretation would "completely ignore, or even read out, the term 'seeking' from 'seeking admission.' The term 'seeking' implies action. Noncitizens who are present in the country for years, like [Petitioner] . . . are not actively 'seeking admission.'" *Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (quotations omitted).[4] Thus, Respondents' interpretation is not supported by the text, whereas Petitioner's is.

Respondents have contended that Petitioner's interpretation rewards those who unlawfully enter the United States without inspection and remain in the country for many years. But as explained above, if this was Congress's concern, it would have simply declared that all "applicants for admission" must be detained. Instead, § 1225(b)(2) provides that a subset of applicants—those actually "seeking admission"—are to be detained. It is not the Court's prerogative to rewrite statutes in order to effectuate Congress's perceived objectives.[5]

---

[4] Other District Courts making this same point include (but certainly are not limited to): *Sales Abrocio v. Noem*, 2025 WL 3295530, at *3-5 (D. Neb. Nov. 25, 2025); *Mairena-Munguia v. Arnott*, 2025 WL 3229132, at *3-4 (W.D. Mo. Nov. 19, 2025); *Picazo v. Sheehan*, 2025 WL 3006188, at *3 n.2 (N.D. Iowa Oct. 27, 2025); *Belsai D.S. v. Bondi*, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025); *Hernandez Marcelo v. Trump*, 2025 WL 2741230, at *7 (S.D. Iowa Sep. 10, 2025); *see also*, *e.g.*, *Hernandez v. Baltazar*, 2025 WL 2996643, at *5 (D. Colo. Oct. 24, 2025); *Patel v. Corwley*, 2025 WL 2996787, at *7-8 (N.D. Ill. Oct. 24, 2025); *Lomeu v. Soto*, 2025 WL 2981296, at *8 (D.N.J. Oct. 23, 2025); *Hyppolite v. Noem*, 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025); *Echevarria v. Bondi*, 2025 WL 2821282, at *6 (D. Ariz. Oct. 3, 2025); *Lepe v. Andrews*, 2025 WL 2716910, at *5 (E.D. Cal. Sep. 23, 2025). In addition, the Seventh Circuit endorsed these conclusions in the context of its review of a preliminary injunction. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060-62 (7th Cir. 2025).

[5] For that matter, it is entirely possible Congress intended the statutes to be interpreted as they have been here. Congress may have recognized some aliens would inevitably enter the country and establish productive lives. Congress could choose, as a matter of policy, to (1) afford such individuals the opportunity to seek bond because their ties to the community might demonstrate they are not flight risks while (2) depriving that opportunity to those who arrive at the border and would likely lack the ability to assure they will appear for hearings and other proceedings. Ultimately, it is not the Court's role to either divine Congress's purpose or determine the appropriate policy.

Moreover, Respondents' interpretation is inconsistent with recent amendments to § 1226. In 2025, Congress passed the Laken Riley Act, which added § 1226(c)(1)(E) and requires detention of aliens who are inadmissible pursuant to § 1182(a)(6)(A), (D), or (E). But under the Respondent's interpretation of these provisions, such aliens are already subject to mandatory detention under § 1225(b)(2)—which means the 2025 amendments to § 1226 have no purpose. "[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). Moreover, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995). Given a choice between Respondent's interpretation (which would render the 2025 amendment superfluous) and Petitioner's interpretation (which would give the amendment purpose), Petitioner's interpretation is preferred.[6]

Finally, Respondents have pointed to the BIA's decision in *Matter of Yajure Hurtado*, 29 &N Dec. 216 (BIA 2025), which relies heavily on the conclusion (rejected herein) that an "applicant for admission" under § 1225(a) is automatically "seeking admission" under § 1225(b)(2). However, the BIA's decision is not entitled to deference for a variety of reasons, including (1) the issue involves interpretation of statutes, not the exercise of agency discretion or

---

[6] Other District Courts making this point include, but are not limited to: *Sales Abrocio v. Noem*, 2025 WL 3295530, at *6 (D. Neb. Nov. 25, 2025); *Avila v. Bondi*, 2025 WL 2976539, *6 (D. Minn. Oct. 21, 2025); *Helbrum v. Olson*, 2025 WL 2840273, at * 4 (S.D. Iowa Sep. 30, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, at *5 (N.D. Iowa Sep. 23, 2025); *see also Licona v. Ladwig*, 2026 WL 324020, at *7 (W.D. Tenn. Feb. 6, 2026); *Patel v. Crowley*, 2025 WL 2996787, at *8 (N.D. Ill. Oct. 24, 2025); *Gutierrez v. Baltasar*, 2025 WL 2962908, at *7 (D. Colo. Oct. 17, 2025); *Covarrubias v. Vergara*, 2025 WL 2950097, at *4 (S.D. Tex. Oct. 8, 2025); *Lepe v. Andrews*, 2025 WL 2716910, at *6-7 (E.D. Cal. Sep. 23, 2025); *Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025); *dos Santos v. Noem*, 2025 WL 2370988, at *7 (D. Mass. Aug. 14, 2025).

expertise, and (2) the decision is contrary to the agency's long-standing practice and interpretation of the statutes.[7] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-88 (2024).[8]

### D. Remaining Issues

Petitioner argues he is also entitled to relief under the Due Process Clause. The Court's conclusion that he is entitled to relief under the INA makes it unnecessary to separately consider the Due Process Clause.

Second, Petitioner argues that he should be released because his continued detention was unlawful and asks for a bond hearing as an alternative remedy. (*E.g.*, Doc. 1, ¶¶ 7, 53-54; Doc. 6, pp. 1-2.) The Court acknowledges that some District Judges (including some in this District) have independently evaluated whether a Petitioner should be released on bond and ordered the Petitioner's immediate release. The Court declines to do so for two reasons. First, the Court has no information upon which to evaluate whether Petitioner should be granted bond. Second, in a situation where a bond hearing was improperly denied, requiring that he be allowed to seek a bond hearing is an appropriate remedy.

---

[7] Some District Courts have also examined the Government's historical practices under §§ 1225 and 1226 and relied on them as evidence of those statutes' meanings. This inquiry would only further support the Court's conclusion, so the Court will not delve into it; however, as one of those courts stated, "over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal." *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *5 (E.D. Mich. Aug. 29, 2025); *see also, e.g.*, *Susu Zheng v. Daley*, 2026 WL 281129, at *8 (E.D. Ky. Feb. 3, 2026); *Vazquez v. Feeley*, 2025 WL 2676082, at *15-16 (D. Nev. Sept. 17, 2025); *Rosado v. Figueroa*, 2025 WL 2337099, at *9 (D. Ariz. Aug. 11, 2025); *Martinez v. Hyde*, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025).

[8] Other District Courts to similarly reject *Matter of Yajure Hurtado* in light of the Supreme Court's decision in *Loper Bright* include: *Lopez v. Jeffreys*, 2025 WL 3533875, at *5 (D. Neb. Dec. 5, 2025); *Avila v. Bondi*, 2025 WL 2976539, at *5 n.7 (D. Minn. Oct. 21, 2025); *Belsai D.S. v. Bondi*, 2025 WL 2802947, at *7 n.5 (D. Minn. Oct. 1, 2025); *see also Merchan-Pacheo v. Noem*, 2026 WL 88526, at *11 (D. Colo. Jan. 12, 2026); *Ramos v. Rkosky*, 2025 WL 3063588, at *8 (D.N.J. Nov. 3, 2025); *Velasquez v. Noem*, 2025 WL 3003684, at *6 (D. Md. Oct. 27, 2025); *Hernandez v. Crawford*, 2025 WL 2940702, at *2 n.4 (E.D. Va. Oct. 16, 2025); *Barrera v. Tindall*, 2025 WL 2690565, at *5 (W.D. Ky Sept. 19, 2025); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *6 (E.D. Mich. Sept. 9, 2025).

### III.  CONCLUSION

The Court concludes Petitioner is not subject to mandatory detention pursuant to 8 U.S.C. § 1225, and that he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226.[9]  Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED**.  Respondents are **ORDERED** to either release Petitioner or grant him a bond hearing within ten (10) days of this Order.  If a hearing is held, bond may not be denied on the basis that detention is mandatory; instead, an individualized assessment must be made, based on the standards in effect before *Matter of Yajure Hurtado* was issued.  Finally, Petitioner may not be removed or transported from this judicial district before any such hearing is held.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
**DATE**:  March 11, 2026        UNITED STATES DISTRICT COURT

---

[9] The Court acknowledges the recent contrary decision issued by the Fifth Circuit in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).  The Court has reviewed that decision and does not find it as persuasive as those supporting the decision made herein.